Let's just wait for the council to exit the room. Okay Mr. Cole. Thank you, Judge Menashe, and may it please the court. At issue in this appeal is whether the district court improperly struck Troy Booth's answer when he didn't appear for a deposition and ultimately entered a default judgment against him when, in the same case, the district court found after a hearing that the other corrections officers, all of whom were similarly situated, did not have a valid claim. I'm sorry, there was no valid claim against those corrections officers. Well, at the time of striking the answer, the district court didn't know that that's how that was going to be resolved, right? I'm sorry, Judge Menashe? At the time of the striking of the answer, did the district court know that there wasn't exhaustion? That's right. It had denied the summary judgment motion. But the important point is the district court did not enter the default judgment based on the answer having been struck until after the district court had already determined that Thompson's claim against the other corrections officers were barred under the Prison Litigation Reform Act based on failure to exhaust. Right, so that isn't the argument, not that it was erroneous to strike the answer, but that it was erroneous not to vacate the default judgment. Well, the default judgment came later, but you're absolutely right to say that when Booth eventually got help from the people at Hofstra Law School, at a minimum, the district court should have vacated the judgment and put the kids ... The default against him, right? What's that? The default against him, right? Yes. He sends an email to the court on March 20th, 2022, and he says, I need help from the court. I'd like to participate, and so on. I didn't know that I wasn't being represented. He explains the thing. So the district court says, the court construes defendant Booth's March 20, 2022 email as a motion to vacate the default judgment entered against him for compensatory damages, right? Right. And then it denies the motion. Yes. Okay. So even if it was a proper sanction to strike the answer, isn't the question ... Then there's the question about whether the district court was right not to deny his motion to vacate the default judgment. Well, I think it goes without saying that if there was no basis to enter the default judgment in the first place, that is to say that the sanction for a discovery violation was mistaken, that it is sensible to use vacate the default judgment. I'm interested in this question because Rule 37, B2A says that a sanction for not obeying a discovery order is striking a pleading. So let's assume that I think it's okay as a sanction to strike the answer. I'm then more interested in this question about whether the district court should have vacated the default judgment. I mean, we say, we have said, yeah, we said and we're on oil, right? Because defaults are generally disfavored and are reserved for rare occasions when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party. A district court should grant default judgment sparingly and grant leave to set aside the entry of default freely when the defaulting party is appearing pro se, which Mr. Booth was. And so what are the Enron oil factors? So one is willfulness, right? And so there might have been some willfulness here because he did seem to know about it, but he has an argument about why he didn't appear, right? He was rendered homeless and out of contact and so on. Maybe that's an explanation. But then the other one is whether he had had a meritorious defense, right? At the time he asked to vacate the default judgment, we knew he had a meritorious defense, right? Yes. And the meritorious defense was that Thompson had not exhausted his prison administrative remedies. Right. And that would apply equally to Mr. Booth as to the other defendants, right? Yes. Yes. And I will say this. And so then there's the question about prejudice to the other party. But if it had been fully litigated against the other defendants and there was no special issues with respect to Booth, would there be any additional burden on the other party? Well, the failure to exhaust was fully litigated. In fact, the district court held a hearing on that, denied a summary judgment motion, held a hearing, decided following the hearing that Thompson had not exhausted his administrative remedies and therefore his claim was barred. There was no substantive difference between his claim against Corrections Officers 1, 2, 3, and 4 and his claim against Booth. They were all involved in the same common act. Would he have been able to pursue his administrative remedies against Booth after Booth left the employee of the department? I'm sorry, just go ahead. Would he have been able to, would Mr. Thompson have been able to pursue his remedies, administrative remedies against Mr. Booth once Mr. Booth left the employee of the department? Well, presumably so because the department would still be responsible for him under some notion of respondeat superior. I mean, true, a 1983 case is always brought against the person individually for- He was no longer part of the ongoing proceedings there. He had kind of absented himself and was just among the missing. And I just wondered whether he would have appeared contrary to his behavior in these proceedings. Well, do we know whether, do we know when he was separated from the department? It's in his last letter here, which is in the brief. I'm just wondering, was he still with the department at the time? There are pretty short time limits on exhausting your administrative remedies. And if he was still there at the time that the exhaustion was taking place, then I take it Mr. Moore, aka Thompson, would have been able to pursue them against Booth. Well, he was separated in January of 2018, but I don't think- Does it matter? I mean, do you pursue administrative remedies against an individual corrections officer? I mean, if the allegation is that there was a bunch of excessive force by multiple officers, it's not like the remedy is something specific to one of the officers. It's about training and supervision and security and so on, right? Well, look, if you go back to the history of this thing, and that was the case Patsy against Florida and all the rest of it. The idea is you try to resolve these cases ahead of time in some meaningful way in the prison administration. Each of the individual defendants is alleged to have perpetrated different acts against Mr. Thompson. Isn't that right? Well, a couple of them were added on, but Thompson and Booth was in the same group that subdued him with the others. So it wasn't like he did it by himself, it was he and some other people. No, no, but Mr. Thompson made varying allegations about the roles of the individuals. Well, a separate question then is also, what is the standard of review for the entry here for your appeal of the entry of the default? Aren't we on abuse of discretion review? Well, that's the point that I've been trying to separate from. And that is, the discretion always presupposes a choice within a permissible range. And it's my position on this appeal, and it's that it's just not permissible to strike someone's answer for a one-off failure to show up in a deposition absent something else. Well, you say a one-off, but there were repeated, yes. Yeah, it wasn't a one-off failure. At least the district court thinks that there were repeated attempts to contact him and he didn't engage. Now, I would say he does have an explanation for that. He says he thinks he was represented by the union and so on, and he was homeless, and living in a different place. And so maybe there's an excuse for it, but it wasn't just a one-off. A failure to appear, right? Well, the reason the answer was struck, as I read it, was that he didn't show up for his deposition in his court order. And to me, that by itself is not within that permissible range. Okay, but even if the striking of the answer was permissible, you still would agree with the argument that Mr. Ron Owell factors required the district court to vacate the default judgment, right? Yes. Can I ask another question? So you make this argument based on preclusion and law of the case, right? Issue of preclusion, Your Honor, yes. I'm not sure that that's right, because there hasn't been a final judgment yet, right, when he decides what to do. I don't know if there's law of the case, because it's an affirmative defense, and one party can waive it or not. I guess my question is, there is this case from the Supreme Court, which we apply in some cases, called Frow v. De La Vega, do you know what that is? No, just quickly. So Frow v. De La Vega, the Supreme Court says, it would be unreasonable to hold that because one defendant had made default, the plaintiff should have a decree even against him, where the court is satisfied from the proofs offered by the other, that in fact the plaintiff is not entitled to a decree. And that such an incongruity would be unseemly and absurd as well as unauthorized by law, right? So we do have cases that say that when you have multiple defendants and one defaults but the case proceeds to trial against the other ones, you should not have inconsistent judgments because you have had a trial on those issues, right? That's generally correct. So wouldn't that principle more naturally apply than the law of the case doctrine? Well, I don't call it law of the case. I call it issue preclusion. And it's standard out of the restatement judgments. There is a final determination against the other officers that none of which, or that is to say that in no case did Thompson exhaust his administrative remedies. And if he doesn't do that against those four- Some of the points the Supreme Court makes in Frow is that when you have a trial on it, there are certain facts that are established. And the default judgment can't be inconsistent with those facts that are established. So in the case here, as it went to trial, it was established that the plaintiff did not exhaust his administrative remedies, right? Yes, there was a hearing- The liability for Mr. Booth is inconsistent with those facts, right? That's correct. Would you distinguish at all, however, between a inconsistency based on a procedural failure versus a kind of substantive or factual determination? For example, here we have failure to exhaust, which is a procedural requirement placed on the prisoner by the PLRA. But the, and the verdict was based on that conclusion, that there had been a failure to exhaust. But there was no finding that was inconsistent, for example, about whether the assault had occurred, or whether injuries were suffered as a result of the assault. Would you see any difference between the two of those? Kinds of inconsistencies, a procedural kind of failure versus a substantive failure. I'm not sure I grasp your question, Judge Carney, because the Prison Litigation Reform Act comes in and says you must exhaust your administrative remedies to the extent they're available. The Supreme Court has a few exceptions they've written into that. But here, they were not exhausted. I understand that. I'm trying to suggest that perhaps there's a, that the concern we ought to have about rendering or allowing inconsistent judgments might be tempered if the inconsistency is based on a procedural failure as opposed to starkly inconsistent factual findings. I think there's something to be said about that. Thank you. The only difference is really this is an affirmative defense. It's not an unworthy thing because it's only procedural. It is an affirmative defense, and I suppose there is at least some issue here in principle because we don't actually have on the record the answer that was filed on behalf of Mr. Boone. It's very weird to me that that is true. Well, you know, Judge Lynch, I put that, I normally don't put a footnote in a brief, but I put that in because I wasn't sure if that was a rogue docket clerk that just read something literally, or there's a practice to do that, but we shouldn't be taking filed answers off the docket. Yeah, the assumption, and the basic facts here would be utterly bizarre if the Attorney General had not filed the same cookie cutter answer for Booth. Exactly. But for everybody else, but yeah, I mean the distinction that Judge Carney is suggesting might have some root in, there's a difference between affirmative defenses and things that the plaintiff has to prove or something like that. But you know, keep in mind- Yeah, so the difference would be, you know, if a jury determined that the assault had never happened, right? There really would be a clear contradiction between the legal judgment against your client and the other ones. So maybe that invokes the frow principle, and that's too embarrassing to the justice system to have those inconsistent judgments. But if it's an affirmative defense that Booth could have waived, maybe that's different, it's not part of a prime official case, does that make a difference? Well, except that he didn't waive it, it was asserted in his answer. Well, he asserts it in his answer, but then the answer is stricken, and that goes back to whether that was allowed or not. I guess the other point, you know, I would make is that it's true we call exhaustion of administrative remedies an affirmative defense. But sometimes you allow a motion to dismiss to proceed based on exhaustion of administrative remedies. Sometimes we uphold judgments where a court determines on the face of the complaint that there was no exhaustion. So sometimes we treat exhaustion of administrative remedies as a threshold defense. Well, keep in mind that when the Prison Litigation Reform Act came in, it wasn't specified, and the act still isn't, whether it's an affirmative defense or not. And what happened was you had a handful of district courts who were kind of doing this advanced screening of prisoner petitions. And pitching them because nothing was said, I believe it was the Sixth Circuit, just said, yeah, that's fine, I don't remember which one. And eventually they get to the Supreme Court, and the Supreme Court says, hold on here, we got to make sure the system is fair. And who's in the best position to say whether it was exhausted or not? Well, not the corrections officers, but the prison itself who runs the administrative scheme. Yeah, I guess you're saying it's just about allocating the burden. But there are some cases, you know, if the claim were time barred, you know, the statute of limitations is also an affirmative defense, I guess. But if we knew from the face of the complaint that the claim had been filed out of time, it would be an inconsistent judgment to enforce that against some defendants and not the defaulting party, right? I know that's a little closer call, because there are a fair number of cases in which people are allowed to- Well, I guess I will say, I happen to know that there is a difference among the circuits about whether this prohibition on inconsistent judgments, where one is defaulting and one is not defaulting, there's a disagreement about whether it applies in the case of an affirmative defense. And I was kind of suggesting what arguments we might think about in resolving that. And my thought is, well, exhaustion of administrative remedies, statute of limitations, something like that, is something that just applies to all defendants equally and doesn't require a separate factual development, and maybe that makes a difference, and so then that does seem inconsistent. Well, it doesn't require, in this instance, any separate factual development because you either file your claim with the prison or you don't. And I should say, the whole point about Rule 8, which sets out all the affirmative defenses, the whole point of that rule is to put somebody on notice. Well, in that answer that was removed from the docket, yes. Thompson was put on notice. You didn't exhaust your administrative remedies here. And whether the answer is struck or not, that's still in the case in that sense. Because he didn't intentionally- This is a case in which the plaintiff alleges, and if we believe his allegations, it happened, that he was brutally beaten by guards. But he lost his case because he couldn't manage to navigate and file the things he needed to file to have administrative remedies. And then the question becomes, does the defendant Booth, who also was unable to navigate the procedural technicalities of litigating a case pro se, get rescued by us? Because he's shown that he was in the throes of addiction and thus engaged in self-destructive behavior during the litigation. And all of this is in the interest of preserving a $50,000 judgment that it sure looks like. Unless Mr. Booth hits the lottery, it's never going to get paid by anybody. And that's what we're here with lots of lawyers talking about. And that we're going to have to decide arcane issues about what's an affirmative defense and what's not. And I guess I'm just in constant awe of what we wind up having to talk about in cases where it's hard for me to see how it matters to anybody at the end of the day. Do you have any reason to think that, I mean, is this going to indemnify him for the judgment? Two thoughts. One, there are collateral consequences of judgments. So, I mean, you have that whether you like it or not. But the other thing, and I couldn't agree with you more. The plaintiff has to play by the rules, and if he misses one thing, he's doomed. The defendant, eh. Well, no, that's not true either. If he doesn't assert affirmative defense in his answer, he might be, eh, as well. But my point, and here's why- But if he basically tells his own lawyer, don't bother me with this anymore, I don't care. Which is actually what is in the sealed letter that somehow we happen to have access to, even though you guys don't. I understand that. It just boggles my mind that we are even here. But we are here, and we've got to decide the case according to the law. I couldn't agree with you more about the mind-boggling part of this. And that's why, kind of the back end, I said, these are the kinds of cases that somehow end up jumping the track. And I always ask myself, in a case like this, did someone try to make an effort at the AG's office, say, look, we're not representing you anymore, the southern district has a terrific pro se office. Or NILAG, that Robin Tarnoski used to run over next door, does a great job. You can get some help. What I have found in my own experience with people, is once they understand you're there to help them, they'll usually cooperate. But you gotta catch these things early on. I mean, I guess I don't quite get why it doesn't matter. I mean, Congress specified in the PLRA that administrative exhaustion is important, because the prison should have a chance to remedy the problem before the prisoner goes into court, right? Exactly. So we take seriously exhaustion of administrative remedies. Right. And we have a strong preference for adjudicating disputes on the merits, and not entering default judgments against somebody who hasn't appeared in the case, right? Isn't it pretty important if there's a judgment against Mr. Booth for $50,000, we'd rather he have the opportunity to be heard on what his defenses are, than not, than just entering a judgment against him? Well, I think it's better than that. The district court should have dismissed the claim against him for the same reason it dismissed the others, which is failure to exhaust administrative remedies under the- But we are an abusive discretion review. And from my review of the record, Judge Halpern was extraordinarily patient and intent on pursuing this to the best of his abilities in a fair way. And felt that he, the court's requirements with the appearance of lawyers and people trying to contact Mr. Booth and Mr. Booth hanging up on them, that he was pursuing the best course available to him. The hearing that he conducted with regard to the actual damages was meticulous. And this was not just like a one time failure to show up. This was a course of behavior. It does seem that Mr. Booth was in terrible circumstances and having been dismissed by the prison and having a lot of very difficult difficulties. But I'm not sure that, to me, this falls in the category of an abusive discretion. The district court lived through this. Well, no one is suggesting for a moment that the district court abused any discretion in holding a hearing. No argument there, Your Honor. The abuse of discretion is striking the answer. Well, you're saying it's an abuse of discretion for striking the answer. But as before, I am more focused on the argument that Mr. Booth makes in his pro se brief about the Enron oil factors, right? So he makes what amounts to a Rule 55 motion to vacate the default judgment. Right. And Judge Halpern doesn't even go through the Enron oil factors at that point. But later, after trial, when you have a Rule 60 motion, he does go through them. And what does he say? He says it was willful. He just says it was willful. He doesn't say, take account of the circumstances, which we think might temper the willfulness. But then the other thing is, he says there isn't a meritorious defense because the answer was stricken. Well, doesn't that just beg the question? So the answer was stricken because he defaulted. And so you don't say, if I vacate the default, he's not going to have a meritorious defense because I struck his answer because he defaulted. I mean, isn't that just circular? I agree. That is. It doesn't have to be that if the default were vacated and he were able to appear, would he have a meritorious defense? And we know the answer is yes. Of course. Because every other defendant had a meritorious defense. Yes. So that was wrong when the district court said he didn't have a meritorious defense. Couldn't agree more. And then he says that there's prejudice to the other party because they've been litigating for a long time and they will have to keep litigating, right? But in fact, they litigated the question of exhaustion of administrative remedies. Yeah. There's no difference between the facts applicable to those defendants and to Mr. Booth. So it's also wrong that there would have to be more litigation over exhaustion of administrative remedies, right? That's correct. So it was false for the district court to say that he wouldn't have a meritorious defense. It was false for him to say that there was prejudice to the opposing party. Well, I think that's correct. I don't want to push against an open door on that. Thanks. But I think that that's exactly right. But I do say, Judge Carney, this is where I do disagree with you. And that is discretion always presupposes a choice in a permissible range. There are instances when you strike an answer. I'm aware that abuse of discretion presupposes some boundaries. Yeah. Yeah. Thank you. We're just, we're not within that. That's all, Your Honor. Thank you. Okay. Thank you very much, Mr. Cole. You have reserved time for rebuttal. But we'll hear from the appellee, Ms. Horton. Good morning, Your Honors, and may it please the court. Rachel Horton on behalf of Kevin Thompson. On appeal, Mr. Booth has not pointed to any clear error in the district court's factual findings or any abuse of discretion. I'd also like to note that the reply brief- The district court denying the motion to vacate the default judgment. So we've said whenever there's any doubt on the part of a district court, it should vacate the default judgment. Because we favor hearing cases on the merits. And that's especially true when the party is pro se. So he appeared before there was an entry of a final judgment. And he said, please vacate the default judgment. And the district court said no. District court didn't really explain itself at that time. But later explained itself along the lines I just said. I said it's willful. Fine, maybe there's some kind of willfulness. But, you know, it is a balancing test. So the fact that he was homeless and relocated and so on maybe should play some role in the balancing test. But then more importantly, the idea that he doesn't have a meritorious defense because he defaulted is just circular, right? So doesn't he have a meritorious defense because the failure to exhaust applies equally to him? Ask the other defendants. Thank you, Your Honor. On SA 34, that's the ruling that Your Honor is talking about with regard to the default judgment. And Mr. Booth improperly submitted that email to the district court. District courts need to have discretion to be able to control their docket. And Mr. Booth had been warned multiple times that he should not be sending emails to the court. Once Mr. Booth then submitted a more- The court construes defendant Booth's March 2022 email as a motion to vacate the default judgment entered against him for compensatory damages in the amount of $50,000. Construing defendant Booth's motion liberally in light of his pro se status, the court finds that his motion is unsupported by fact and law. So the district court entertains it as a motion to vacate the default judgment and denies that motion. So whether it was, you know, maybe, you know, he shouldn't have sent it as an email. Certainly it didn't have the form that it would have had if he had been represented by counsel. But we construed pro se filings liberally, and that's what the district court did here. And so isn't it before us whether the district court properly denied the motion to vacate the default judgment? Well, on A1005, the district court had explicitly warned Mr. Booth that it would not consider arguments in emails. Getting to the Rule 55 factors- But it did. It did. Well, getting to the- Whether it said it wouldn't, it did. Getting to the Rule 55- Doesn't that usually, isn't that usually good enough? If somebody, even if a lawyer, doesn't make an argument, but the district court nevertheless rules on that argument, then we have the power to correct if the district court ruled on it erroneously. Well, there was not error here, Your Honor. So I'll go to the Rule 55 factors, which is what Judge Menascio is asking about. First is whether the defendant's conduct was willful. I want to point out that the district court had a number of factors in front of it. The defendants here had different results because they had engaged in different conduct. Mr. Booth repeatedly violated court orders and he refused to engage in discovery for more than a year and a half in this case. His conduct was absolutely willful. So, for example, under Michaelis-Pawnshop, this court said that there's no requirement to raise an affirmative defense sua sponte for a defendant. And so defendants are on notice in this circuit that they can't simply ignore proceedings for nearly two years and then have it get out of jail for a year. Yeah, of course he can't, but he comes back before there's a final judgment entered in the case and he says, look, I was fired, I lost my family, I was rendered homeless, I moved around, I thought that I was represented. But now I realize that that's not true. I'd like the help of the court and please vacate the default judgment. And we've said that when that happens, especially when it's a pro se party, the thumb should be on the scale of vacating the default judgment, right? So it's willful in the sense that he knew that something was going on. But do we think it was in bad faith? Like, was he not homeless? Was he not unable to get a lot of the communication? Well, we're not sure, Your Honor. That the police union was representing him? Because Mr. Booth never submitted to his court order deposition. Similarly, the- So what you're suggesting is that there are indeed, as Mr. Cole said from the beginning, two steps here. There is first a sanctions order, and there is secondly a default. And what you're suggesting it sounds to me is that the sanctions order was not an abuse of discretion. Because as of that time, you had a litigant who appeared to be totally recalcitrant and totally ignoring everything. So as a result, his answer is spricken. At that point, there's not a default judgment, right? There's just that. Correct. Nobody ever comes back and challenges that. Then later, there's a motion for a default judgment. Correct. And then that is what is being attempted to be undone. But if the original order was appropriate, does that influence whether the default judgment should be undone? Yes, absolutely, Judge Lynch. And that is the second factor under the Rule 55 test, which is whether there is a meritorious defense. Here, there was no defense, because exhaustion of administrative remedies is an affirmative defense. The defendants are required to plead and plead. I'm sorry, but when you're applying the Rule 55 factors or the N1R factors, you're deciding whether to vacate the default, right? If the default had been vacated, then the litigation would have proceeded and he would have been able to file an answer, right? No, Your Honor. His answer had been stricken. And so he would have to show good cause. But I'm sorry, so you're saying if, in fact, the district court had vacated the default so there wasn't a default in the judgment against him, it would have brought him back into the case as a litigant, but still prohibited him from filing anything more? Well, in the district court's- When you vacate a default judgment, what you're saying is I'm not going to say that you defaulted. I'm going to allow you to litigate on the merits, right? Yes, Your Honor. The entry of default was a separate decision from the Rule 37 sanction to strike the answer. And they had about a year between the two. And so if Mr. Booth had been allowed to reactivate himself in the case, he could have moved in the district court to reinstate an answer. Or file a new one or whatever the further proceedings would have been, right? Yes. And the further proceedings, for example, could have been a trial. But here- Okay, so when we're deciding how to apply the Enron oil factors, when we get to factor two that says whether he has a meritorious defense, the question is, if he will be allowed to re-enter the litigation, would he be able to assert a meritorious defense, right? Well, the answer here to that is no. Because as of right now, the record before this court, his answer is stricken. But what about the record that was before the district court when it denied the motion to vacate the default? Well, the- When the district court was deciding the motion to vacate the default, the record before it was, a bunch of defendants had just been determined not to be liable or to have a meritorious defense because of lack of exhaustion of administrative remedies. So didn't that indicate that Mr. Booth would have been able to assert a meritorious defense? Well, Mr. Booth's argument here is that this court would have to find that it's an abuse of discretion for the district court to not sue a sponte permit and a defendant to overcome his Rule 37 sanction and reassert an affirmative defense. But that's- No, actually, I think you could tell from the questions that I was skeptical of Mr. Cole's argument that it was an abuse of discretion to strike the answer. I'm not even making that argument. I'm saying, okay, that is a penalty for not complying with discovery orders. But then, there's a separate question as to when the defaulting party reappears before the entry of final judgment and makes a motion to vacate the default and allow them to litigate on the merits. That's a separate question as to whether the district court erred in denying that motion. Right? And if the district court had granted the motion and vacated the default, it would have allowed Mr. Booth to re-enter the litigation and he could have asserted whatever defense was available, right? The district court had the entire record from the proceedings and the full record here fully supports its conclusion, both under Rule 55 and 37. Okay, well, I just said that it doesn't support the conclusion for the following reason, which is when the district court says he does not have a meritorious defense, it's circular. He's saying he doesn't have a meritorious defense because he defaulted after I, then I struck it, because I struck his answer. But if you vacate the default judgment, the question when you're considering a Rule 55 motion is whether if you re-entered the case and litigated on the merits, you'd have a meritorious defense. And because the record shows that these other defendants who are identically situated as Mr. Booth had a meritorious defense, the record showed that he did. So why is that, why is that mistaken? So it might be the district court was wrong to say he didn't have a meritorious, he wouldn't be able to have a meritorious defense. So you can tell me why that is not accurate. Well, under the procedural posture of this case, there was no affirmative defense that Mr. Booth had pled. Defendants have to plead and prove exhaustion. The other defendants here- Yeah, so at the time that the Rule 55 motion is made, the district court should not have entered judgment in favor of Mr. Booth. But the question is, if you vacate the default and allow him to litigate, would he then be able to assert a meritorious defense going forward? No, Your Honor, because this court has time and again, in McKayla's Pawn Shop and Bamboo Sales, affirmed that district courts have the authority to protect their dockets and the orderly administration of justice. And there are consequences when courts are ignored by litigants. So the sanction is really what the key is, in your view, not really the default. Because the default is indeed just a consequence, I suppose, ultimately of the sanction and of the fact that Mr. Booth then didn't come back right away and say, I'm sorry, I'd like to undo that sanction. But waits until after there has been a default judgment entered. So it's not just a question of he never showed up. It's a question of he willfully refused to participate and incurred a sanction. Yes, Your Honor. And in addition, the fall before the motion for default judgment ruling, the judgment actually is discussed, Mr. Booth did surface one more time, you know, writing emails to the court. And the district court permitted him to oppose the motion for default judgment. And he did not even do that. Yeah. Is there any reason to think that New York State would pay this judgment? Your Honor, I do not know that standing here today. And of course, we don't know because there's never been a factual adjudication with respect to the truth of Mr. Booth's allegations about his circumstances during all of this. Any more than we know about the truth of the allegations that Mr. Thompson was beaten because we never got to the merits of that either. So I suppose there is always the possibility that the judgment could be payable or could be enforceable by Mr. Thompson against Mr. Booth. Of course, it's a little hard to see how he's going to do that pro se, go to Texas and try to investigate Mr. Booth's resources. And I take it that pro bono counsel has been appointed for purposes of this appeal and not for purposes of pursuing the enforcement of the judgment. So does this really make any difference to anybody at the end of the day except maybe Mr. Booth who, you know, might like to live his life without a judgment against him? But what really benefit is this to Mr. Thompson? Thank you, Your Honor. $50,000 is a significant benefit to Mr. Thompson. It's a great benefit if he collects it. If he collects it. Is there any reason on earth to think he ever will? Yes, Your Honor. We're optimistic that he would be able to collect it. He would be able to collect the judgment with an affirmation. Hope springs eternal. I would like to point out that Mr. Thompson is in the courtroom today. Mr. Booth was sued for incredibly serious conduct when Mr. Thompson was experiencing a medical emergency in custody. Rather than getting aid, Mr. Booth brutally beat him. And so $50,000 is important to Mr. Thompson. What is the basis for your assertion that you're optimistic he'd be able to collect some or all of it? Well, this is not my area of expertise, but there are a number of lawyers out there who are very good at collecting judgments, either from someone who's working, which Mr. Booth asserted in some letter or email that he was. He's, you know, working in some job in Texas. So the circumstances have improved? It's unclear at this point, Your Honor. So can I ask to clarify, you know, when there is a defaulting party, it means that somebody hasn't shown up for a long time, right? Not necessarily a long time. I mean, this court has affirmed a default. I mean, we say that, you know, Rule 55 motions should be granted if you meet the interim oil factors, only one of which is willfulness, right? So it's always going to be the case that somebody hasn't shown up for a long time. But we still say the presumption is that you would grant only from the default if there's any doubt about the propriety of the default, because we want to have adjudications on the merits, right? Well, I agree that... It's a small concession, but I'm just, you know, it is true that it's not dispositive that somebody doesn't show up for a long time and therefore there's no way to lift the default. The presumption is that you would lift the default, right? I agree that it is a multi-factor test that the district court weighs in its discretion and that its discretion is somewhat cabined. But the third factor that I haven't yet addressed is prejudice. And the district court actually did make this finding on SA111, where it discussed how at this point in this litigation, Mr. Thompson had been litigating for six years. Discovery Counsel had withdrawn their appearances and so... But he had been litigating for six years and they litigated this question of the absorption of administrative remedies. So if Mr. Booth had come back into the case and said, well, that defense applies to me just like the other defendants, how much more time would that have taken? Well, there's no answer. And so Mr. Booth hasn't pled exhaustion of administrative remedies. And so it would take a lot of time and it would take a lot of burden on the court. I'm sorry, if the district court vacates the default judgment and says, okay, you are now a party to the case and he moves for leave to file an answer and the answer says he didn't exhaust, I don't know, maybe that would take a month, right? I don't think that it's a foregone conclusion that a litigant should be able to overcome their Rule 37 sanction simply by filing a motion. Was the Rule 37 sanction irrevocable? Well, I'm not sure that that's one of the factors. It's a good cause standard and the... Well, the good cause standard is about lifting the default under Rule 55, right? I'm not even talking about lifting the sanction. I'm saying if he lifted the default, he would just... Maybe he could file a new answer or a motion to dismiss. And then you'd be... But your point is then he'd be litigating that issue. If he comes back and says, well, okay, the default is now lifted and I just want to file an answer and my answer is one sentence, he didn't exhaust his administrative remedies and therefore I should prevail, then there would still be litigation over the question of whether he could file a new answer given that he had been sanctioned for his pre-default conduct. Yes, Your Honor. It's water under the bridge at this point. District courts have authority to enforce their orders and to enforce their Rule 37 sanctions. I was a junkie and was engaged in self-destructive behavior at the time. Is that good cause? It's not, Your Honor. Under Bamboo Sales, the defendant said that they had some grave illness that prevented them from complying with the discovery order. Well, I had a mental breakdown and I was addicted to drugs and I moved somewhere else and didn't have access to communications might be an excuse, right? Not on this record, Your Honor. I mean, with the willful recalcitrance that Mr. Booth showed for more than a year... Would it have been an abuse of discretion for the district court to lift the default if he had granted the motion? I don't think so, Your Honor. The district court could have gone the other way and lifted the default. Yes. So if the district court had decided that it should lift the default, what would have happened then? Booth would have been able to litigate on the merits, right? On the merits without an exhaustion defense, yes. He could have tried to convince the jury that he did not beat Mr. Thompson. I'm sorry, if the district court let him back into the case, somehow it still prohibited him from asserting the defense that all the other defendants asserted? Why would that be the case? Well, I think that we're sort of talking about hypotheticals here, but it seems that a district court has an institutional interest in ensuring that its Rule 37 orders stay in place. And so... Okay, I get that argument. I mean, I asked Mr. Cole about Frow v. DeLaVega. Do you know that case? I understand from Your Honor that it's about consistent results. We have this case from the Supreme Court, which we haven't applied for a while, but other circuits have and we may again, that when you have a case that proceeds to trial against some defendants, but there's a defaulting defendant, it doesn't make any sense to say you have a judgment against the defaulting defendant if the trial showed the factual predicate for the judgment was not there, right? Don't we have that here? Is there any reason for thinking that the exhaustion defense with respect to the other defendants doesn't equally apply to Mr. Booth? Your Honor, the reason why this outcome is consistent is because the other defendants complied with their discovery obligations and litigated it, and therefore, they got the benefit of exhaustion. But that's the case with Frow also, and that's the case always in this principle that a default judgment should not be inconsistent with a judgment on the merits that was litigated. So it's always going to be the case that somebody defaulted and somebody did not default. But the Supreme Court has told us that the judgments should not be inconsistent. So isn't the judgment here inconsistent? No, Your Honor, it's not. Because just like in Michaela's pawn shop, which I've mentioned, and also Robertson, this court has held that there is no requirement that a district court resurrect a forfeited argument, or pardon me, affirmative defense. So in Robertson, the defendant had forfeited his personal jurisdiction defense. In fact, the defense of the defendants here was not about exhaustion of administrative remedies. It was the assault never happened, right? So that's their defense. That's what they put in their answer. That's what Mr. Booth put in his answer. But his answer was stricken. So there's a default judgment against him. Everybody else proceeds to trial. The jury concludes the assault never happened. Like the whole factual predicate of the claim is false. Would you still say, okay, the non-defaulting defendants are not liable, but we still have the default judgment against Mr. Booth for an assault that the jury determined never happened? Your Honor, I'm not prepared to answer that today. Just because that's so- Perhaps the default judgment would stand that there'd be no award. Related to it. I mean, here the district court conducted a hearing regarding the factual, the damages and the basis for the amount of the default judgment. But so maybe in Judge Monashie's hypothetical, a judgment, an adverse judgment of liability would stand, but there would be zero award because there'd be no basis, no factual basis for any award. Or maybe even a $1, but maybe not even that, because there would be a kind of sanction to the extent that it was at all meaningful to keep it on the docket. But there would be no award and therefore there would be no substantive inconsistency or meaningful inconsistency like in the real world. That seems possible, Your Honor, if the facts were different and if the defendants had won on a jury fact finding that there was actually no attack in 2014. Why would that be the case? I mean, the district court, when it enters a judgment of liability, has to determine that there's a factual basis for the claim, right? So how do you have a judgment of liability against somebody after a jury determined that the assault never happened? Again, Your Honor, your hypothetical assumes that the attack did not happen in 2014, but here there was a damages inquest where the judge heard testimony from Mr. Thompson and... Yeah, but I'm not talking about that. I'm talking about, so you're saying the inconsistency that some defendants are not liable because of the failure to exhaust, it's fine, even though that didn't apply to people like Mr. Booth, for Mr. Booth to then be liable. And I'm just asking, well, if it was, if the inconsistency were more stark that a jury determined that actually the assault never happened, would you be making the same argument? There is not an inconsistency in this case because an affirmative defense was pled, but it was stricken. And so that distinguishes this case from the Supreme Court case you've raised. So then in my hypothetical, you would say that if the jury determined the assault never happened, the default judgment should be mitigated? Because that would be inconsistent. Your Honor, could you repeat the question? So you're saying the difference between my hypothetical and this case is the idea that it's an affirmative defense as opposed to the basics of the claim. So in my hypothetical, you would say that, in fact, the default judgment should be vacated if they had determined that there wasn't an assault. And here, everything hinges on the fact that the exhaustion of administrative remedies is an affirmative defense. Is that right? Yes, Your Honor. Okay, thank you very much. Ms. Horton, we'll turn back to Mr. Cole on rebuttal. Let me kind of go back to something Judge Lynch said, and that is this business of going back to the district court and going through the whole thing over and over again. If you think for a moment about a default, even when you enter a default when someone doesn't answer, you still have to show the clerk you have a meritorious claim or perhaps to take one of your pleading cases, a plausible claim for relief. Here, I think we know, Judge Mnuchin, from the point that you're making very well, that there is no claim here because the district court held a hearing and it determined that Mr. Thompson did not exist as a prison administrator of remedies. So there's no point to go back to the district court to do this over and over. Now, I do understand, Judge Connie, you've got a great point there, keep the default in to show it's a sanction and preserve the value of the court. I get it. But I don't think we need to go back to the district court and have a do-over and that's why I make the point, I'll make it again, about striking the answer, sad to say, is kind of the core problem here because once you do that, then my friend Ms. Horton then makes a point, we'll see, there's no defense and it's affirmative defense and now you have to start all over. But regardless of that, if in fact the district court had decided to vacate the default, Mr. Guth would have come back into the case, right? Is there any reason for thinking that if the district court had determined that he should be afforded the opportunity to litigate on the merits, he would still be prohibited from filing any further pleadings? No, no. And I always take the view that if this goes back, it should be a Rule 15 standard about putting the answer back in. But the problem is when you look at the Rule 37 sanction, that keeps coming up as the argument, well, you didn't appear at the deposition, whatever it be, and that's the core problem. Okay, let me ask you this. So Ms. Horton just said, well, if in fact the other defendants had prevailed on a finding by the jury that went to an element of the claim as opposed to an affirmative defense, it would be inconsistent and you should vacate the default judgment. But it makes a difference that it's an affirmative defense. So what do you think about that? Well, I don't agree that it makes a difference that it's an affirmative defense. And it's an interesting point you make, because when I was writing the brief, I was trying to find some more rationale about why the Supreme Court said, well, we have to treat it as an affirmative defense. And the basic rule is it's because the prison isn't the best spot to show whether the administrative remedies were foregone or not. At this point, I agree with the point you've made, because I'm not going to, again, push against an open door. If you've got a situation in which it goes back, it's rather pointless to have it go back without starting afresh and saying- What would have been a meaningful sanction? Do you agree that Judge Halpern, it was within his discretion to impose a sanction based on- Yes. Yes? Yeah. So what would a meaningful sanction have been? Well, the one I suggested in the brief is that you could preclude, and this comes up, I've seen it myself in litigation, you would preclude Booth from testifying at the trial if he doesn't appear at a deposition. I've had that come up a few times. If he's not appearing at all, how would that be a meaningful sanction? Well- So if he comes back and tries to reactivate and decides- Well, right. But the point I was trying to make before, and I thought I made it kind of in the reply brief, but maybe not well enough, you know, usually you strike someone's discovery sanction when that person has some sort of critical evidence that's necessary to your case. The point of it is here that Booth doesn't have that critical evidence. Thompson doesn't need Booth's testimony. Doesn't need it at all. Well, wait a minute. There were varying accounts of what happened. That's right. And who did what in the assault. So why wasn't Booth's participation an important aspect of the litigation? Well, of course it would be. But my point is that you could have always had a lesser sanction. What would that sanction be? Precluding Booth from testifying at the trial. Okay. So what you'd have in that situation would be Mr. Thompson's testimony about what happened and presumably the testimony of the various other individuals. Yeah. Right. And that would have left his answer intact. And then we wouldn't even get to Judge Menasche's issue about making the results of the litigation come out consistently because it would have come out consistently. Right. Right. I'm trying to do this in what I think is kind of the easy way. But, you know, I understand. And I certainly do accept Judge Lins' view. And I made the point at the end of the brief. An awful lot of work has gone into this case by the district court, by Ms. Horton, myself, this panel. And imagine for what, you know. It's just a little strange to think of the sanction as being precluded from testifying at trial when he's given no indication that he's going to show up for anything. But you see, the problem is, Mr. Call, I guess your argument is, at the end of the day, the sanction was for not showing up at the deposition. Yes. He may before, after, whenever, during the course of conduct have done other things, but he was never sanctioned for those things. The only sanction that came at the end was the default judgment being imposed. And that relates solely back to the fact that the answer wasn't an issue because if the answer had stood, then the summary judgment motion, I suppose, would have carried for everyone. Well, it was after a hearing and not a summary judgment motion. He denied the summary judgment motion and then granted it at the end of a hearing. But I mean, it is a distinction between things you're required to do and things that a litigant ought to do but doesn't do. And that's just this kind of dumb litigant rule, I think. Okay. Thank you very much, Mr. Cole. The case is submitted.